# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

BRYAN MORRIS, et al.,        )
     Plaintiffs,          )
                        )
     v.                   )     **Case No. 3: 19-cv-00631**
                        )     **Magistrate Judge Frensley**
CITY OF RIDGETOP, et al.,   )     **Jury Demand**
     Defendants.        )

## <u>MEMORANDUM AND ORDER</u>

This 42 U.S.C. § 1983 matter is before the Court on defendants' motions for summary judgment. Docket Nos. 58, 63. Plaintiffs oppose the motions and defendants have replied. The parties have consented to proceed before a magistrate judge pursuant to 28 U.S.C. § 636(c). After reviewing the record and the briefs, for the reasons set forth below, defendants' motions will be granted in part and denied in part.

## I.      BACKGROUND

Plaintiffs Bryan Morris, Tillman Bratton, Shawn Taylor, Don Azbill, and Alex Shotomide, former police officers for the City of Ridgetop, Tennessee ("City" or "Ridgetop"), filed suit against the City and others asserting they retaliated against them for exercising their right to free speech in violation of the First Amendment. The relevant factual background, taken largely from plaintiffs' verified complaint, is as follows.[1]

At an October 17, 2017, City meeting, McCaw Johnson, Ridgetop Vice Mayor, announced

---

[1]A plaintiff's verified complaint is the equivalent of an affidavit in opposition to a motion for summary judgment, and a complaint signed under penalty of perjury pursuant to 28 U.S.C. § 1746 is the equivalent of a verified complaint. *Roberson v. Hayti Police Dept.*, 241 F. 3d 992, 994-95 (8th Cir. 2001). "Although a party may not generally rest on his pleadings to create a fact issue sufficient to survive summary judgment, the facts alleged in a verified complaint need not be repeated in a responsive affidavit in order to survive a summary judgment motion." *Id.* (citing *Williams v. Adams*, 935 F. 2d 960, 961 (8th Cir. 1991)).

the implementation of a ticket quota of 210 citations per month per officer which was recorded in the City's minutes. Docket No. 1, p. 4. Following the meeting, Aldermen Mike Harris and Josh Reasoner discussed the practice and agreed that the ticket quota was illegal under Tennessee law.[2] Id. The following day, Johnson sent a text message to the Board of Mayor and Aldermen ("Board" or "BOMA") members, as well as Kelly Rider, City Recorder, stating that he regretted his statement at the meeting. Id.

Between March and November 2018, Plaintiffs had various confrontations with the BOMA over the ticket quota and attempted to have the ticket quota investigated and prosecuted by the Robertson County District Attorney. Docket No. 1, pp. 5-7. Because nothing had been done to stop the illegal quota activity occurring in Ridgetop, Plaintiffs contacted the media. Id. at p. 7. In December 2018, Dennis Ferrier, reporter at Fox 17 News, appeared before the BOMA to report on the illegal ticket quota. The BOMA was aware beforehand that the media was coming to question them about the quota. Docket No. 68-1, p. 1; 68-2, p. 3. Officer Taylor was interviewed, and during the interview he disclosed parts of an investigation he had been conducting into the illegal ticket quota. Docket No. 68-4, p. 2. Taylor stated in his declaration, among other things, that speaking to the media about the investigation was not a part of his job duties, and that under normal circumstances speaking about an open investigation is generally prohibited. Id. Taylor further stated in his declaration that speaking to the media as a private citizen was a last resort to address a matter of public concern. Id.

At a June 10, 2019, meeting, Mayor Tony Reasoner and the Board voted to eliminate the

---

[2] Tennessee Code Annotated section 39-16-516(b) states: "A political subdivision or any agency of this state may not require or suggest to a law enforcement officer that the law enforcement officer is required or expected to issue a predetermined or specified number of any type or combination of types of traffic citations within a specified period." T.C.A. § 39-16-516(b).

Ridgetop police department, which resulted in the elimination of plaintiffs' jobs. Plaintiffs then filed a lawsuit in state court seeking to enjoin defendants' actions in voting to eliminate the police department.

On June 14, 2019, the Chancery Court overseeing the state litigation issued a temporary restraining order enjoining and restraining the City from taking various actions to eliminate the police department. Docket No. 1-2, p. 2. On June 25, 2019, the parties to the state suit entered into an agreed order for a preliminary injunction, declaring the actions taken at the June 10, 2019, meeting of the Board were "null and void." Docket No. 1-4, pp. 1-2.

On July 2, 2019, City council members held another meeting, at which time they voted to eliminate all police officers, except for Chief Morris. Sometime after the meeting, Mayor Reasoner informed Officer Shotomide that there was a ticket quota, and then laughed and stated to Shotomide, but "not anymore because there is no longer a department." Docket No. 70-4, p. 2. Reasoner further stated, "You're a good man Alex, sorry that this is happening to you, but this is how it is going to be." Id. .

This suit followed. Plaintiffs name as Defendants the City of Ridgetop; Tony Reasoner, Mayor; Mark Johnson, Alderman; McCaw Johnson, Vice-Mayor; Ronald "Sam" Rider, former member of BOMA; and Kelly Rider, City Recorder. Docket No. 1. Plaintiffs assert § 1983 claims for retaliation in violation of the First Amendment and conspiracy (Counts I and II). Id. at pp. 16-17. They assert a state law claim for official oppression in violation of Tenn. Code Ann. § 39-16-403 (Count III). Id. at p. 19. Plaintiffs bring suit against defendants in their individual and official capacities.

Defendants now move for summary judgment. In support of their motions, Defendants submitted, among other things, their own declarations, as well as the news broadcasts of Chief of

Police Bryan Morris and undercover Officer Shawn Taylor speaking to the media. Docket Nos. 59, 59-1-5, Docket No. 60, p. 1. Manually Filed Exs. 38-39. Defendants argue plaintiffs cannot satisfy any of the elements for a First Amendment retaliation claim. They argue plaintiffs cannot prove a conspiracy to violate their First Amendment rights, and even if they could, any claim is barred by the intra-corporate conspiracy doctrine. Defendants further argue Plaintiffs' claim for official oppression fails as a matter of law, because T.C.A. § 39-16-403 does not provide for a private cause of action.

Defendants Reasoner, Mark Johnson, McCaw Johnson, Sam Rider, and Kelly Rider (Individual Defendants) filed a separate motion for summary judgment, arguing that to the extent Plaintiffs' constitutional claims survive summary judgment, the claims against them as individuals still fail. Docket No. 63. They assert members of BOMA are entitled to absolute immunity against suit for legislative actions, including their vote to disband the police department, as well as qualified immunity against suit for Plaintiffs' § 1983 claims. Docket No. 64, pp. 2-6. City Recorder Kelly Rider contends that because she had no decision making or supervisory authority over the City police officers, she did not--and could not--cause Plaintiffs alleged constitutional violations. Rider argues that even if one assumed she had such authority, she is entitled to qualified immunity. Defendants reiterate Plaintiffs' state law claim for official oppression fails as matter of law. Id., pp. 7-9.

Plaintiffs oppose the motions.

## II.  LAW AND ANALYSIS

Rule 56 requires the court to grant a motion for summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.  56(a). If a moving defendant shows that there is no genuine issue

of material fact as to at least one essential element of the plaintiff's claim, the burden shifts to the plaintiff to provide evidence beyond the pleadings, "set[ting] forth specific facts showing that there is a genuine issue for trial." *Moldowan v. City of Warren*, 578 F. 3d 351, 374 (6th Cir. 2009); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). "In evaluating the evidence, the court must draw all inferences in the light most favorable to the non-moving party." *Moldowan*, 578 F. 3d at 374 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, (1986)).

At this stage, "'the judge's function is not ... to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, (1986)). But "[t]he mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient," and the party's proof must be more than "merely colorable." *Anderson v. Liberty Lobby*, 477 U.S. 242, 249, 252 (1986). An issue of fact is "genuine" only if a reasonable jury could find for the non-moving party. *Moldowan*, 578 F. 3d at 374 (citing *Anderson*, 477 U.S. at 252).

### A.     First Amendment Retaliation Claim

In Count I, plaintiffs allege defendants engaged in wrongful conduct to terminate and retaliate against them, prompted by plaintiffs' exercise of their First Amendment rights in disclosing the Board's implementation of the unlawful ticket quota to the media. Docket No. 1, pp. 16-17. Defendants assert Plaintiffs cannot establish the elements for a prima facie claim of First Amendment retaliation. Docket No. 62, p. 16.

It is long "settled that a state cannot condition public employment on a basis that infringes the employee's constitutionally protected interest in freedom of expression." *Connick v. Myers*, 461 U.S. 138 (1983). However, because "government offices could not function if every employment decision became a constitutional matter," *Id*. at 143, a public employee's First

Amendment rights are narrower than the citizenry at large. *See, e.g., Pickering v. Bd. of Educ.*, 391 U.S. 563, 568 (1968). That is, "the First Amendment protects a public employee's right, in certain circumstances, to speak as a citizen addressing matters of public concern." *Garcetti v. Ceballos*, 547 U.S. 410, 417 (2006).

To establish a prima facie case for First Amendment retaliation, a plaintiff must show: (1) that he engaged in constitutionally protected speech or conduct; (2) that the defendant took adverse action against him "that would deter a person of ordinary firmness from engaging in that conduct"; and (3) that the protected conduct caused the adverse action, at least in part. *Thaddeus-X v. Blatter*, 175 F. 3d 378, 394 (6th Cir. 1999) (en banc).

### 1.  Did The Plaintiffs Engage In Constitutionally Protected Speech Or Conduct

The determination of whether Plaintiffs engaged in protected speech is a question of law. *Connick v. Myers*, 461 U.S. 138, 148, n. 7 (holding that the "inquiry into the protected status of speech is one of law, not fact."); *Mayhew v. City of Smyrna, Tennessee*, 856 F. 3d 456, 463-64 (6th Cir. 2017). The court engages in a three-step inquiry to determine whether a public employee's speech is protected. *Mayhew*, 856 F. 3d at 462; *Myers v. City of Centerville*, 41 F. 4th 746, 760 (6th Cir. 2022). First, it ascertains whether the speech addressed a matter of public concern. *Id.* (citing *Connick*, 461 U.S. at 143). Second, the Court determines whether the employee spoke as a private citizen or as an employee pursuant to official duties. *Mayhew,* 856 F. 3d at 462 (citing *Garcetti v. Caballos*, 547 U.S. 410, 421 (2006)). Third, the employee must show that his speech interest outweighs "the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees. *Mayhew*, 856 F. 3d at 462.

### a.  Did the speech involve a matter of public concern

To determine whether speech involved a matter of public concern, the Court looks to the

"content, form, and context of a given statement, as revealed by the whole record." *Connick,* 461 U.S. at 147-48; *Noble v. Cincinnati and Hamilton Cnty. Public Library*, 112 F. 4th 373 (6th. Cir. 2024). If a public employee speaks pursuant to employment responsibilities, and not "as a citizen," the court need not address whether the employee's speech touched on matters of public concern. *Weisbarth v. Geauga Park Dist.*, 499 F. 3d 538, 546-47 (citing *Mills v. City of Evansville*, 452 F. 3d 646, 647-48 (7th Cir. 2006) ("before asking whether the subject-matter of particular speech is a topic of public concern, the court must decide whether the plaintiff was speaking "as a citizen" or as part of her public job. Only when government penalizes speech that a plaintiff utters "as a citizen" must the court consider the [Connick/Pickering analysis].")).

Chief Morris and Officer Taylor allege defendants retaliated against them for speaking to the media to expose the illegal ticket quota and for filing the state lawsuit in violation of their First Amendment rights. Defendants concede Plaintiffs' actions implicate matters of public concern for purposes of summary judgment, and therefore the first element is satisfied. Docket No. 62, pp. 16-17. *See e.g., Eckerman v. Tennessee Dep't of Safety*, 636 F. 3d 202, 208 (6th Cir. 2010) (citation omitted) (the filing of a lawsuit to redress grievances is clearly protected activity under the First Amendment.")

> **b.    Did the Plaintiffs speak as private citizens or as part of their official duties.**

The second step of the inquiry for protected speech requires the court to determine whether the employee spoke as a private citizen or as an employee pursuant to official duties. *Mayhew,* 856 F. 3d at 462 (citing *Garcetti v. Caballos*, 547 U.S. 410, 421 (2006)). Under the Supreme Court decision in *Garcetti v. Ceballos*, speech on a matter of public concern will be unprotected under the First Amendment if it was pursuant to the employee's official responsibilities. *Id.* at 421-25. The Supreme Court has not "articulate[d] a comprehensive framework for defining the scope of

an employee's duties in cases where there is room for serious debate." *Garcetti*, 547 U.S. at 424.

> [The] proper inquiry is a practical one. Formal job descriptions often bear little resemblance to the duties an employee is actually expected to perform, and the listing of a given task in an employer's job description is neither necessary nor sufficient to demonstrate that conducting the task is within the employer's professional duties for First Amendment purposes.

*Id.* 424-25. To aid in the assessment of a public employee's statement, the court must consider "both its content and context." *Fox v. Traverse City Area Pub. Schools Bd. Of Educ.,* 605 F.3d 345, 348 (6th Cir. 2010). In the Sixth Circuit prior to *Lane v. Franks*, 573 U.S. 228, 241 (2014), courts recognized several non-exhaustive factors to consider, including: the speech's impetus; its setting; its audience; and its general subject matter. *Handy-Clay v. City of Memphis*, 695 F. 3d 531, 540 (6th Cir. 2012). In *Lane,* the Supreme Court held that a public employee's truthful testimony on a matter of public concern, given pursuant to subpoena and outside of his ordinary job responsibilities, is protected First Amendment speech. 573 U.S. 228. *Lane* stated" [t]he critical question under *Garcetti* is whether the speech at issue itself is ordinarily within the scope of an employee's duties, not whether it merely concerns those duties." *Id.* at 240. The subpoenaed testimony in question in *Lane* was clearly a matter of public concern because it pertained to public corruption from misuse of state funds. *Id.* The Sixth Circuit has continued to use these "who, where, what, when, why, and how" considerations post-*Lane. Mayhew*, 856 F. 3d 456, 464.

Defendants assert Plaintiffs' speech was made in their capacities as public employees. With respect to Chief Morris, relying on a written job description, Defendants state it was an essential function for Morris, as chief of police, to meet with the media for interviews pertaining to police matters. Docket No. 62, p. 20. Defendants note that in the Channel 17 televised broadcast, Morris appears on camera in the police department, seated at his desk, wearing his police uniform and badge, and discusses the ongoing investigation of the alleged ticket quota. Docket No. 60, Ex. 38.

Chief Morris meanwhile disputes the authenticity of the job description, noting that it is unsigned, and that it is dated 2017, long after he was appointed to and held the position of chief. Docket No. 69, p. 9. He therefore disputes the job description's applicability to him in his position as chief as he had held the position of chief for many years prior to 2017. Id.

Speech by a public employee made pursuant to ad hoc or de facto duties not appearing in any written job description is nevertheless not protected if it "owes its existence to [the speaker's] professional responsibilities." *Fox*, 605 F. 3d at 348-49 (quoting *Weisbarth*, 499 F. 3d at 544). The "who, where, what, when, why, and how" considerations post-*Lane* support the conclusion that Morris's speech owes its existence to his professional responsibilities as chief of police.

As to "who" and "where," in the Channel 17 broadcast, Morris speaks on camera while located in the police department sitting at his desk. He is wearing his uniform and badge. A police poster and professional credentials hang on the wall. Docket. No. 60, Ex. 38. As to "what," in the interview, Morris states that a ticket quota is being forced on the department and that the department is being forced to write an "astronomical amount" of tickets. He states that while he sees a need for issuing tickets, he cannot justify his force spending the majority of their time writing tickets and not doing anything else. Concerning "why," he states that it is not the police department's job to generate revenue, specifically, revenue for their own salaries. *Id.* Similarly, in the Channel 5 broadcast, Morris again appears on camera at the police department, wearing a police department jacket and badge. Docket No. 60, Ex. 39. Morris states, among other things, that he "does see a need for tickets, but does not see a need for excessive tickets." Id. He states, "[t]hey want me to do something that is illegal, and in my opinion, immoral." He states he "is not here to make money, [he] is here to run a police department." Id.

Like the common law's "scope of employment" test, courts have looked to all of the

circumstances surrounding the speech. *See Fledderjohann v. Celina City Sch. Bd. of Educ.*, 825 F. App'x 289, 293-98 (6th Cir. 2020); *cf.* Restatement (Second) of Agency §§ 228–37 (Am. L. Inst. 1958). In this context, the impetus, setting, and subject matter taken together support the conclusion that Morris spoke to the media pursuant to his ordinary job duties as chief of police and spokesperson for the department, and therefore did not engage in protected speech. With respect Morris's impetus or motivation, Morris is speaking to fulfill an ordinary job duty, protecting the public and looking out for the welfare of his officers. As to setting, Morris was interviewed in uniform, at his desk at the police department. This again supports the conclusion that his speech was that of public employee. *See Handy-Clay v. City of Memphis*, 695 F. 3d 531, 540-42 (6th Cir 2012) (on-the-clock speech at the employer's place of business is more likely to be speech as a government agent as compared to off-the-clock speech away from the office).

Another question concerns the speech's audience. Speech to supervisors is more likely to be speech as a government agent as compared to speech to outside individuals. For example, a police officer acted as a public employee when he complained to his chief about training cutbacks, as did a public-records employee when she complained to supervisors about obstacles to obtaining records. *See Haynes v. City of Circleville*, 474 F. 3d 357, 364 (6th Cir. 2007); *Handy-Clay*, 695 F. 3d at 541–42; *see also Bushong v. Delaware City Sch. Dist.*, 851 F. App'x 541, 544 (6th Cir. 2021); *Fox v. Traverse City Area Pub. Schs. Bd. of Educ.*, 605 F. 3d 345, 349 (6th Cir. 2010). However, a police officer acted as a concerned citizen when he spoke to the FBI about corruption in the ranks, as did an officer who issued his own "press release" about discrimination in the department. *See Barrow v. City of Hillview*, 775 F. App'x 801, 813 (6th Cir. 2019).

Here, the circumstances surrounding the speech present a close question because while Morris's job duties as chief require communicating to the media about matters of public concern,

he spoke to the media in order to expose the illegal ticket quota, placing his own position at risk. However, Morris states nothing in the interview to suggest he is acting in his personal capacity; one would expect the chief of police to speak on this and similar issues.

The Court concludes the "who, where, what, when, why, and how" considerations here support the conclusion that Morris's speech was that of a public employee, and not of a private citizen. Morris's speech is therefore not protected for purposes of a First Amendment retaliation claim. Accordingly, the Court's inquiry ends. Morris has failed to establish a prima facie case for First Amendment retaliation for his speech to the media.

Taylor's interview with Channel 17 presents another case. As to "where," "what," and "when," during the interview Taylor appears on camera after hours and provides a "secret" interview. He wears plain clothes. His face is purposely obscured to hide his identity as an undercover officer, and not because of the interview. The location of where the interview takes place is not disclosed, nor is it discernible from the interview. Docket No. 60, Ex. 38. As to "how," and "why," Taylor states that he is aware he is putting his own job at risk by speaking out about the illegal ticket quota, but that it's "our job, to call out [the illegal ticket quota], and that "we're [the police] [the citizens'] last line of defense." Id. In his sworn written declaration, Taylor states that his Channel 17 interview was conducted after hours and was not part of his job duties as a police officer; that his investigation into the Board was not technically part of his job duties; that the interview could have resulted in his termination, but that he believed that disclosing the Board's illegality to citizens and the public justified his actions. Docket No. 68-4, p. 2.

Based on the foregoing, on this record, the court concludes Taylor's speech to the media does not fall within his "ordinary job responsibilities" and therefore constitutes speech of a private citizen, satisfying the second element. *See Pucci v. Nineteenth Dist. Ct.*, 628 F. 3d 752, 768 (6th

Cir. 2010) (when considering these questions in the course of resolving a summary judgment motion, the court takes any disputed historical facts in the light most favorable to the plaintiff). *cf. Decrane v. Eckart*, 12 F. 4th 586, 596 (6th Cir. 2021) (media leak mistakenly believed to be made by fire department employee about chief's insufficient training hours was protected speech to support First Amendment retaliation claim), and cases cited therein, comparing cases involving speech to supervisors versus speech to outsiders.

### c.    Does the interest of the individual outweigh the interest of the employer

As to the third factor for protected speech, the court considers whether the speech interest outweighs "the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Mayhew*, 856 F. 3d at 462. Defendants do not assert, and cannot demonstrate, any government interest that tips the balance in their favor. Having concluded Taylor's speech is protected, Taylor has met the first element of his retaliation claim.

### 2.    Did the Plaintiff suffer an Adverse Action

To satisfy the second element of a First Amendment retaliation claim, Taylor must show that Defendants took an adverse action against him "that would deter a person of ordinary firmness from continuing to engage in that conduct." *Thaddeus-X v. Blatter*, 175 F. 3d 378, 394 (6th Cir. 1999) (en banc). The City does not dispute that Taylor can establish an adverse employment action for the purposes of summary judgment based on the elimination of his position through the elimination of the police department on June 10 and July 2, 2019. Docket No. 62, p. 22. Taylor has therefore satisfied the second element.

### 3.    Is There a Causal Connection Between the Speech and Adverse Action

The third element of a retaliation claim requires a Plaintiff to prove a causal connection between the protected conduct and the adverse action, at least in part. *Thaddeus-X,* 175 F. 3d at

394. In support, Plaintiffs point to Defendants' admissions and other acts as evidence that Defendants were not merely making a budgetary or business decision to eliminate the police department but were instead seeking to retaliate against them. Morris stated in his declaration that Mayor Reasoner was "enraged" after plaintiffs obtained a TRO in the state litigation; that Reasoner initially refused to accept service of the state court pleadings; that Reasoner refused to provide Morris the keys to the police department; and that after a brief standoff that required the City attorney to intervene and speak with Plaintiffs' attorney, Reasoner complied with the Order and provided him the keys to the police department. Docket No. 68-1, pp. 6-7.

Taylor also stated in his declaration that the Board never openly discussed the substantial elimination of the police department budget or any deviation from the budgetary amounts represented to the public on May 2, 2019, and that the budget issue arose for the first time on July 2, 2019. Docket 68-4, pp. 2-4. Taylor also stated that shortly before the vote to eliminate the police department on June 10, 2019, Mark Johnson openly stated that the City needed to shut down the entire department and "start up a new one with different officers." Id. at p. 4. Plaintiffs contend Johnson's statement is an admission that there was no financial crisis taking place in Ridgetop; that Defendants had problems with Plaintiffs, not the City's budget; and that otherwise Johnson would not have mentioned starting up a new department by hiring different officers. Docket Nos. 68-4, p. 4; 69, p. 19. Plaintiffs also reference Defendants' participation in unauthorized meetings, agreements, and budget manipulations. Docket No. 68-1, 68-4. Based on the above, the Court concludes Taylor has satisfied the third and final element of his prima facie case.

If an employee establishes a prima facie case, the burden then shifts to the employer to demonstrate "by a preponderance of the evidence that the employment decision would have been the same absent the protected conduct." *Eckermann v. Tenn. Dep't of Safety*, 636 F.3d 202, 208

(6th Cir. 2010). Defendants counter that the elimination of the police department was a business decision made in light of budgetary concerns.

Applying the standards as set forth above, and resolving all conflicts in favor of Taylor, the court finds there are genuine issues of material fact that preclude summary judgment on this issue, including but not limited to (1) whether defendants' conduct would have been the same absent Taylor's protected activity; and (2) whether the City's police department was eliminated due to budget or retaliatory reasons.

### a.  State lawsuit as protected speech

Morris and Taylor both assert their filing of the state lawsuit[3] on June 14, 2019--four days after the Board voted to eliminate the police department--also constitutes protected First Amendment speech. Defendants concede the filing of the state lawsuit likely constitutes speech as a private citizen, (Docket No. 62, p. 21), but argue that whatever retaliatory intent plaintiffs ascribe to BOMA was evident by June 10, before the state lawsuit was filed, and thus Plaintiffs cannot establish that the state lawsuit caused BOMA to eliminate the police department. In other words, Defendants argue Plaintiffs' First Amendment retaliation claim fails with respect to the filing of the state lawsuit because BOMA voted to eliminate the police department before the suit was filed, therefore Plaintiffs cannot establish causation. The court agrees. *See Nieves v. Bartlett,* 587 U.S. 391, 398 (2019) (if the defendant decides to take the adverse action before the plaintiff engaged in the protected conduct, but-for causation does not exist). Morris and Taylor have failed to establish a prima facie case for First Amendment retaliation based on their filing of the state lawsuit.

---

[3] Plaintiffs Morris, Taylor, and Azbill were parties to the state suit.

### b.     Officers Bratton, Shotomide, and Azbill

Defendants next argue Bratton, Shotomide, and Azbill cannot establish a prima facie case for First Amendment retaliation.  The Court agrees.  Plaintiffs have presented no evidence that Bratton, Shotomide, or Azbill engaged in protected speech. Plaintiffs have provided no evidence that they spoke with prosecutors or to the media regarding the ticket quota investigation, nor were Bratton or Shotomide parties to the state lawsuit.

To the extent Plaintiffs now assert they provided background information to the media or otherwise provided interviews that were not made public, they have provided no evidence Defendants were made aware of their protected speech.  *Cf. Van Huss v. Shoffner*, 81 Fed. App'x 17, 23 (6th Cir. 2003) (holding plaintiff failed to provide evidence that employer had actual knowledge or belief of plaintiff's political affiliation in a First Amendment retaliation case); *Bluegrass Dutch Tr. Morehead, LLC v. Rowan Cty. Fiscal Court*, 734 F. App'x 322, 328-29 (6th Cir. 2018) (in First Amendment retaliation claim, plaintiff has the burden to establish actual, tangible proof that he was perceived to be associated with a political campaign).  To the extent Plaintiffs are now attempting for the first time to assert a "freedom of association" claim contingent on Morris's and Taylor's claims, such a claim also fails.  *See Brax v. City of Grand Rapids*, 742 Fed. App'x. 952, 958 (6th Cir. 2018) (citation and quotations omitted).

The Court concludes plaintiffs Bratton, Shotomide, and Azbill have failed to establish a prima facie case for First Amendment retaliation against Defendants. The Court will grant summary judgment to Defendants on this claim.

### B.     Section 1983 Civil Conspiracy Claim

In Count II, Plaintiffs allege defendants conspired to deprive them of their rights to due process and freedom of speech in retaliation for their exercising their First Amendment rights to

speak out on matters of public concern and for filing a lawsuit. Docket No. 1, pp. 17-19. Plaintiffs assert Defendants engaged in secret meetings in violation of state sunshine laws; conspired to terminate plaintiffs; voted to disband the police department on June 10 and July 2, 2019; altered and manipulated the City's budget to eliminate and justify the elimination of Plaintiffs' positions. *Id*. Plaintiffs assert the secret meetings, agreements, and manipulations of the City's budget are sufficient to demonstrate defendants were acting outside the scope of their employment as independent actors for personal reasons unrelated to City's business and not within the City's best interests.

To succeed on a § 1983 civil conspiracy claim, plaintiffs must prove (1) a single plan existed; (2) Defendants shared in the general conspiratorial objective to deprive Plaintiffs of their constitutional or federal statutory rights; and (3) an overt act was committed in furtherance of the conspiracy that caused injury to plaintiffs. *Regets v. City of Plymouth,* 568 Fed. Appx. 380, 391 (6th Cir. 2014) (cleaned up).

A claim of civil conspiracy does not set forth an independent cause of action, but rather is sustainable only after an underlying claim has been established. *Hanten v. School Dist. of Riverview Gardens,* 183 F. 3d 799, 809 (8th Cir. 1999) (quoting *K&S Partnership v. Continental Bank, N.A.,* 952 F. 2d 971, 980 (8th Cir. 1991), *cert. denied*, 505 U.S. 1205 (1992)). Therefore, when the claims underlying a conspiracy claim have been properly dismissed, the conspiracy claim fails to state a claim for relief as a matter of law. *Id.* Here, because plaintiffs' underlying retaliation claims against all defendants will be dismissed, with the exception of Taylor, the conspiracy claims against these defendants also fail as a matter of law.

Defendants contend that to the extent Plaintiffs' First Amendment retaliation claims survive summary judgment, again--here it survives only against Taylor--any conspiracy claim is

barred by the intracorporate conspiracy doctrine. Docket No. 62, p. 30. The Court agrees.

The intracorporate conspiracy doctrine was recognized in antitrust and civil rights cases based on the legal notion of corporations as "persons." *See Copperweld Corp. v. Indep. Tube Corp.*, 467 U.S. 752, 769, n. 15 (1984). The Sixth Circuit has recognized the relevance of its principles to suits against employees of local government entities as well as against employees of private corporations. *See Hull v. Cuyahoga Valley Joint Vocational Sch. Dist. Bd. of Educ.*, 926 F. 2d 505, 510 (6th Cir. 1991). Furthermore, municipalities are "persons" for purposes of § 1983. *Monell v. Dep't. of Soc. Servs.*, 436 U.S. 658, 690 (1978).

Because a conspiracy requires an agreement between two or more persons, the intracorporate conspiracy doctrine developed to bar conspiracy claims when the alleged conspiracy is between agents of the same legal entity. *See Ziglar v. Abassi*, 582 U.S. 120, 153 (2017); *accord Estate of Smithers v. City of Flint*, 602 F. 3d 758, 764, n. 4 (6th Cir. 2010) (quoting *Hull*, 926 F. 2d 505, 509-10) ("A corporation cannot conspire with itself any more than a private individual can, and it is the general rule that the acts of the agent are the acts of the corporation."). The Supreme Court explained:

> Under this principle—sometimes called the intracorporate conspiracy doctrine—an agreement between or among agents of the same legal entity, when the agents act in their official capacities, is not an unlawful conspiracy. The rule is derived from the nature of the conspiracy prohibition. Conspiracy requires an agreement—and in particular an agreement to do an unlawful act—between two or more separate persons. When two agents of the same legal entity make an agreement in the course of their official duties, however, as a practical and legal matter, their acts are attributed to their principal. And it then follows that there has not been agreement between two or more separate people.

*Ziglar*, 582 U.S. at 153 (internal citations omitted).

In a case of first impression, the Sixth Circuit applied the intracorporate conspiracy doctrine to § 1983 civil conspiracy claims. *Jackson v. City of Cleveland*, 925 F. 3d 793, 818 (6th

Cir. 2022). *Jackson* held that the intracorporate conspiracy doctrine applies in § 1983 suits to bar conspiracy claims where two or more employees of the same entity are alleged to have been acting within the scope of their employment when they allegedly conspired together to deprive the plaintiff of his rights. *Id.* at 819-20. There is no unlawful conspiracy when officers within a single corporate entity consult among themselves and then adopt a policy for the entity." *Ziglar,* 582 U.S. at 153. "The mere 'fact that two or more agents participated in the decision or in the act itself will normally not' suffice to create conspiracy." *Johnson*, 40 F. 3d 837 at 840 (quotation omitted) (applying intracorporate conspiracy doctrine to § 1985(3) case).

"Even improper actions fall within the scope of employment where they are connected with the employer's business." *Saad v. City of Dearborn Heights*, No. 11-10103, 2012 WL 72244, at *3 (E.D. Mich. Jan. 10, 2012); *see also Barrow v. City of Hillview, Kentucky*, 775 F. App'x 801, 807 (6th Cir. 2019) (holding that even if plaintiff's allegations of bias were true, complaints by defendants were within scope of employment because they "were made during the course of their working hours, the remarks were connected to the business of the hospital, and they were forwarded to the proper managerial authorities").

An exception to the intracorporate conspiracy doctrine exists in § 1983 suits where the defendants were alleged to have been acting outside the scope of their employment. *Jackson*, 925 F. 3d 819. For actions taken inside the workplace to be considered outside the scope of employment, a plaintiff must show that the defendants' actions were actually "private acts done by persons who happen to work at the same place." *Johnson*, 40 F. 3d at 840. The parties agree that all individual defendants were employed by the same entity and that there can be no liability unless the individual defendants were acting outside the scope of their employment.

Taylor argues the scope-of-employment exception applies, asserting defendants engaged

in various illegal meetings, agreements, and manipulations of the City budget sufficient to demonstrate defendants were acting outside the scope of their employment for personal reasons unrelated to City business and not within the best interests of the City when they voted to disband the police department. Taylor, however, makes bald assertions and cites no case law to support this argument.

Further, it is undisputed members of the BOMA were acting in their capacities as City officials when they voted on City budget matters and supervised Chief Morris. Rider was also acting in her capacity as a City employee when she took any action in this matter. Therefore, as a matter of law, defendants cannot be liable for § 1983 conspiracy against Taylor where they are alleged to have conspired with other individuals of the same government entity in the scope of their employment. *Jackson*, 925 F. 3d at 820.

The Court therefore finds that the intracorporate conspiracy doctrine bars Taylor's conspiracy claim, and the scope-of-employment exception does not apply. Plaintiffs have not alleged sufficient facts to create a genuine question of material fact that Defendants' vote, decision to disband the police department, and other conduct was made acting outside the scope of employment for personal reasons. *Cf., Welch v. City of Melvindale*, No. 18-11450, 2019 WL 7020744 (C.D. Mich. Dec. 20, 2019) (rejecting scope of employment exception and holding that intra-corporate conspiracy doctrine barred plaintiff's conspiracy claim where former police officer offered no evidence to support his claim of malicious intent or personal vendetta on the part of defendant City and officials). Accordingly, the court will grant defendants' motion for summary judgment on Taylor's § 1983 conspiracy claim.

**C.     Official Oppression, Per Se Violation of T .C. A § 39-16-403**

In Count III, Plaintiffs assert defendants committed official oppression in violation of T.

C. A § 39-16-403.  Docket No. 1, p. 19. Plaintiffs assert Defendants' violation of the statute constitutes a civil action for negligence per se and that the violation was the cause in fact and proximate cause of plaintiffs' injury.  *Id.*  This claim will be dismissed as a matter of law.

Tenn. Code Ann. § 39-16-402, a statute that criminalizes official misconduct, criminalizes behavior of public servants who, "with intent ... to harm another, intentionally or knowingly ... [c]ommit[ ] an act relating to the public servant's ... employment that constitutes an unauthorized exercise of official power."  Tenn. Code Ann. § 39-16-402(a)(1).

In their response, Plaintiffs do not address or make any argument concerning this claim. Nor do they clarify whether the claim is intended to be asserted against the City.  As such, Plaintiffs have waived this claim.  *See, United States v. Denkins*, 367 F. 3d 537, 543–44 (6th Cir. 2004) (as a general rule, a litigant waives a legal claim by initially raising the claim and then explicitly abandoning it later).

As to the individual Defendants, Plaintiffs argue that they are permitted to assert an official oppression claim under the guise of negligence per se. This argument has been rejected by the courts.  *See, Slowik v. Lambert*, 529 F. Supp. 3d 756, 765-66 (E.D. Tenn. 2021) (holding § 39-16-403 could not be the basis for a negligence per se claim; Tennessee's official oppression statute does not create a private right of action and does not establish a standard of care, which is required for a statute to form the basis of negligence per se); *Lawrence v. Ryan*, 2024 U.S. Dist. LEXIS, at *17 (W.D. Tenn., Mar. 13, 2024) (same).  Accordingly, the court will grant defendants summary judgment on plaintiffs' negligence per se claim.

**D.    Individual Defendants' Motion for Summary Judgment**

**1.    Tony Reasoner, Mark Johnson, McCaw Johnson, and Sam Rider**

Individual Defendants Tony Reasoner, Mark Johnson, McCaw Johnson, and Sam Rider

move separately for summary judgment, arguing that even if Plaintiffs' constitutional claims survive summary judgment, the claims against them in their individual capacities fail because they are entitled to absolute legislative immunity for legislative acts, specifically, their vote to eliminate the police department. City Recorder Kelly Rider argues she did not and could not have caused Plaintiffs alleged constitutional violations because she had no decision making or supervisory authority over City police officers, and even if she did, she retains qualified immunity. Docket No. 64, p. 2.

Plaintiffs counter, without citing authority, that the individual Defendants have waived their defense of absolute immunity for legislative acts, contending a Defendant's claim of immunity is an affirmative defense that must be listed in an answer to a complaint under both Tennessee and federal law.

The Supreme Court has held that with respect to legislative immunity, "ordinary rules for determining the appropriate standard of waiver do not apply." *United States v. Helstoski*, 422 U.S. 477, 490 (1979). A defendant may raise an affirmative defense for the first time on summary judgment if doing so does not result in surprise or prejudice to the plaintiff. *Lauderdale v. Wells Fargo Home Mortgage*, 552 Fed. Appx. 566, 573 (6th Cir. 2014). Plaintiffs have made no such showing. Therefore, Defendants' immunity defense is not waived.

The court then turns to the merits of immunity. Although plaintiffs may sue a local legislator in his or her official capacity under § 1983, local legislators may invoke legislative immunity to insulate themselves as individuals from liability based on their legislative activities. *Bogan v. Scott-Harris*, 523 U.S. 44, 49 (1998); *Canary v. Osborn*, 211 F. 3d 324, 328 (6th Cir. 2000) (citing *Bogan,* 523 U.S. at 49). In other words, local legislators will not face personal liability for their legislative activities. *Smith v. Jefferson Cnty. Bd. Of Sch. Comm'rs*, 641 F.3d

197 (6th Cir. 2011). Immunity attaches regardless of the official's underlying motives for taking legislative action. *Bogan*, 523 U.S. at 54. *Bogan* stated:

> Whether an act is legislative turns on the nature of the act, rather than on the motive or intent of the official performing it. The privilege of absolute immunity "would be of little value if [legislators] could be subjected to the cost and inconvenience and distractions of a trial upon a conclusion of the pleader, or hazard of a judgment against them based upon a jury's speculation as to motives.

*Id.*, (quoting *Tenney*, 341 U.S. at 377) (cleaned up). Therefore, even if the Board eliminated officer positions within the police department for improper purposes, the individual members' legislative immunity remains.

In a case similar to the one at hand, the Sixth Circuit held that a legislator's vote which results in the elimination of an employee's position is protected by legislative immunity. *See Smith v. Jefferson Cnty. Bd. of Sch. Comm'rs*, 641 F. 3d 197 (6th Cir. 2011). In *Smith*, the school board voted to close an alternative public school and instead contract with a private school. *Id.* at 202. Three educators who lost their positions as a result of the closure filed First and Fourteenth Amendment claims against school board members in their individual capacities. *Id.* at 204. The Sixth Circuit affirmed summary judgment in favor of the school board, holding that the school board was "engaged in legislative activity when it made the budgetary determinations that eliminated the alternative school" which, in turn, resulted in plaintiffs losing their jobs. *Id.* at 217-18.

*Meyers v. Oxford*, is also instructive. 2017 U.S. Dist. 140570 (E.D. Mich. Aug. 31, 2017) (reversed on other grounds, 739 Fed. App'x at 342). There, plaintiffs, mounted police officers, sued the city and members of city council after the council voted to disband the mounted unit. *Id.* Plaintiffs alleged that city council members voted to disband the unit in retaliation for plaintiffs' participation in then-president Trump's inaugural parade. *Id.* The district court rejected plaintiffs'

argument that legislative immunity was not warranted because removing someone from a government position is not legislative but administrative, reasoning that the act of voting is a legislative act in itself as the council body decided on the motion not just one member. *Id*. at *9. The court determined that "the vote of the council body discontinued the authorized mounted unit, not the removal of a person from a government position." *Id.*

Likewise, the Board here engaged in legislative activity when they voted to eliminate the police department, and as result, Bratton, Taylor, and Shotomide lost their positions as officers. It follows that individual Board members Reasoner, Mark Johnson, McCaw Johnson, and Rider, are entitled to absolute legislative immunity from suit.

### 2. Kelly Rider

Plaintiffs assert claims against City Recorder Rider under § 1983 for First Amendment retaliation and conspiracy. Rider argues separately that she is entitled to qualified immunity because there is no evidence her conduct violated plaintiffs' First Amendment rights. She argues there is no evidence she violated plaintiffs' First Amendment rights, as she did not vote to eliminate police department positions, nor was she Plaintiffs' supervisor. Docket No. 64, pp. 5-6. The Court agrees.

Plaintiffs respond that Rider had an integral part in the violations of the Open Meetings Act, the manipulation of the police department budget, and conspiring with her co-defendants to retaliate against them for engaging in protected activity. Docket No. 71, p. 7. Plaintiffs' brief, however, lacks any legal authority, analysis, or record citation and it is not the Court's or opposing counsel's responsibility to advocate for Plaintiffs. *Cf. Brown v. Cracker Barrel Rest*., 22 F. App'x 577, 578 (6th Cir. 2001) (courts are not required to conjure up unpleaded allegations or guess at the nature of an argument).

23

Notwithstanding the unsupported briefing, the court notes two references to Rider. Morris attested in his declaration that there were substantial changes made to the City budget between May 2 and July 2, 2019, none of which were discussed in a workshop or special meeting. Docket No. 71, p. 5. (citing Morris Decl. ¶ 31.). Morris further attested that defendants, including Rider, made the budget changes outside of any meeting in violation of the Sunshine Act. Id. Morris also concludes that there were violations of the Open Meetings Act because Morris heard that members of BOMA discussed the budget outside of a public meeting. Docket No. 71, p. 5 (citing Morris Decl. ¶ 32.) Morris further attested that Rider was in charge of creating and editing the budget sheets and circulating them to him, the BOMA, and other department heads. Id., p. 6. (citing Morris Decl. ¶ 33.).

Plaintiffs fail to explain how Rider violated Tennessee's Open Meetings Act, or how defendants' alleged violation of the Tennessee Open Meetings Act establishes a First Amendment retaliation claim with respect to Rider. The Court concludes plaintiffs fail to plausibly state a claim that Rider's conduct violated plaintiffs' First Amendment rights, and therefore this claim will be dismissed. *See Thomas v. Tennessee Dep't of Hum. Servs*., No. 3:21-CV-00426, 2022 WL 2286780, at *8 (M.D. Tenn. June 23, 2022) (employment case; while a plaintiff is not required to plead all elements of a *prima facie* case to survive a motion to dismiss, she still must meet the *Iqbal* general plausibility requirement.)

In sum, the Court finds as follows. Chief Morris's speech to the media was that of public employee, and not as private citizen, and therefore Morris has failed to establish a prima facie case for First Amendment retaliation for his speech to the media. Shawn Taylor has satisfied a prima facie case for First Amendment retaliation and therefore this claim remains. The Court finds there are genuine issues of material fact that preclude summary judgment on this issue, including but

24

not limited to (1) whether defendants' conduct would have been the same absent Taylor's protected activity; and (2) whether the City's police department was eliminated due to budget or retaliatory reasons.

All Plaintiffs have failed to establish a prima facie case on their claim that defendants voted to eliminate the police department in retaliation for their filing of the state suit because they have failed to establish the causation prong. The Court concludes Plaintiffs Bratton, Shotomide, and Azbill have failed to demonstrate a prima facie case for First Amendment retaliation against Defendants because they set forth no evidence Defendants were made aware of their protected speech.

The Court grants Defendants summary judgment on Count II, Plaintiffs' claim for conspiracy, as barred by the intracorporate conspiracy doctrine. The Court grants Defendants summary judgment on Count III, official oppression in violation of Tennessee state law, because plaintiffs waived this claim and Tennessee's official oppression statute does not provide a private right of action.

The Court concludes individual Board members Reasoner, Mark Johnson, McCaw Johnson, and Rider, are entitled to absolute legislative immunity from suit. Finally, the court concludes plaintiffs fail to plausibly state a claim that Rider's conduct violated plaintiffs' First Amendment rights, and therefore this claim will be dismissed.

Shawn Taylor's claim for First Amendment retaliation is the sole claim remaining for trial.

### III. CONCLUSION

For all the foregoing reasons, Defendants' motion for motion for summary judgment will be **GRANTED IN PART AND DENIED IN PART**.

**ACCORDINGLY, IT IS HEREBY ORDERED** that defendant City of Ridgetop,

Tennessee's, motion for summary judgment (Docket No. 58) is **GRANTED IN PART** and **DENIED IN PART.**

    **IT IS FURTHER ORDERED** that the individual Defendants' motion for summary judgment (Docket No. 63) is **GRANTED** in its entirety.

    **IT IS FURTHER ORDERED** that a jury trial will be set by separate order at a later date.

    **IT IS SO ORDERED.**

**JEFFERY S. FRENSLEY**
**United States Magistrate Judge**